**Norberto Martinez FLORES, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–373–CR.**

Court of Appeals of Texas, Corpus Christi.

Dec. 30, 1982.

Rehearing Denied Jan. 20, 1983.

Discretionary Review Granted April 13, 1983.

Hector Yznaga, Brownsville, for appellant.

Reynaldo Cantu, Jr., Dist. Atty., Brownsville, for appellee.

Before BISSETT, YOUNG and UTTER, JJ.

## OPINION

YOUNG, Justice.

This is an appeal from a conviction by a jury for murder coming to us from a second trial of this case. Punishment was assessed by the jury at 45 years. The first conviction was reversed by the Court of Criminal Appeals because of a fundamental defect in the charge. We now affirm.

In four grounds of error appellant challenges the correctness of trial court rulings relating to double jeopardy, sufficiency of the evidence, photographs of the deceased, and discussion of parole by the jury.

■ The case of *Durrough v. State*, 620 S.W.2d 134, 138 (Tex.Cr.App.1981) disposes of appellant's first ground in which he contends his second trial should be barred because of the reversal of the judgment from his first trial.

■ In ground of error two appellant contends the trial court erred in overruling his motion for instructed verdict because the evidence conclusively shows that when he caused the death he was acting under the immediate influence of sudden passion arising from an adequate cause. We find that the jury had before it conflicting evidence on whether appellant acted in this manner. The shooting took place at a bar. The record shows that appellant left the bar after engaging in an argument and fight with the deceased. He obtained a gun from his truck and waited in the parking lot. After the passage of approximately 15 minutes, the deceased appeared at the door of the bar and appellant shot him. Appellant testified that at the time he fired the gun he was acting out of rage because of the previous altercation in the bar. From the fifteen minute break in the time between the altercation and the shooting, the jury was entitled to believe that appellant's anger had cooled and that he was not acting under the immediate influence of sudden passion. It was within the province of the jury to make this determination. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Cr. App.1981). There was evidence to support a conviction of either voluntary manslaughter or murder. We will not disturb the jury's choice.

In ground of error three, appellant contends the trial court erred in overruling his motion for new trial wherein he alleges that he was denied a fair trial by jury misconduct consisting of discussion of the parole law during punishment deliberations.

■ Jury discussion of the parole law during punishment deliberation is always misconduct. *Sanders v. State*, 580 S.W.2d 349, 352 (Tex.Cr.App.1979). Such misconduct is harmful if it results in the defendant getting a higher punishment than he would have received had the misconduct not taken place. *Vasquez v. State*, 632 S.W.2d 180 (Tex.App.—Corpus Christi 1982, pet. ref'd). Whether misconduct is harmful must be determined upon the facts of the individual case. *Munroe v. State*, 637 S.W.2d 475, 477 (Tex.Cr.App.1982); *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App.1975).

Seven jurors testified at the motion for new trial hearing. The affidavit of an eighth juror was also admitted into evidence. At the conclusion of that hearing, the trial court found "no harmful conduct" and overruled the motion. That general finding necessarily includes the more specific finding that the misconduct which occurred did not result in the appellant getting a higher punishment.

Four of the jurors who testified could not remember whether the parole law was discussed. The other four jurors agreed that parole was discussed but were vague or in disagreement as to the extent to which it was discussed.

Juror Josefina Gonzalez stated she couldn't remember the word "parole" being used but stated she "briefly" discussed how much time defendant would have to serve if he were given a certain time. The exact content of this discussion, its duration, and its proximity to any votes that were taken were not developed.

Juror Maria Martinez stated that one group of jurors wanted 99 years and that another group argued that this was too much time. She remembers hearing one juror, who was a policeman, respond to this latter group with remarks such as: "He's not going to serve all that" and "He will serve about a third of that" and "He would be out if he behaves." The number of jurors that participated in this exchange, its duration, and its relationship to the voting was not developed. It is plain, however, that the policeman's observations did not influence the "99-year" jurors because the final punishment was set at 45 years.

The affidavit of Juror Siblano Ybarra, Jr., reads in part as follows:

"The foreman of our jury panel was Terrance R. Hayes, II of 2514 Emerald Lake, Harlingen, Texas. Immediately upon retiring to determine punishment, Mr. Hayes conducted a forceful, convincing, and thorough discussion of the Texas parole laws of the State of Texas. This discussion continued during a majority of the time of our deliberation on the punishment decision. At one time Mr.

Hayes, who was our foreman and was conducting the deliberations made the remark that even if a punishment of fifty (50) years would be assessed that the Defendant under the parole laws would be released in ten (10) years or less.

I believe that the discussion of the parole laws was a direct result and the convincing factor of the extreme punishment which was actually assessed. I for one was willing to grant probation and have the Defendant deported out of the State of Texas, but the parole discussion conducted by the foreman made me change my mind."

This affidavit was contradicted by the following testimony of Juror Terrance Hayes who was the foreman of the jury:

Q. Was there a discussion concerning the parole laws?

A. The parole laws?

Q. Yes, sir.

A. No, sir, not directly concerning the parole laws.

I reread the instructions from the judge saying that if we sentenced him to, I believe it was, ten years or less we could recommend parole.

Q. Probation?

A. I'm sorry. Probation. But any matter of parole was up to the Texas Board of Pardons and Paroles, and I told the jury that any sentence we were to decide upon we had to assume that the defendant would serve the term that we decided upon, because that was not a matter for us to decide.

Q. Well, the reason I'm asking you is, there's an affidavit by one your fellow jurors saying there was extensive discussion on parole, in which you were discussing the parole laws. That's what Silbano Ybarra says.

Have you seen his affidavit?

A. No, sir.

Q. No one from the D.A.'s office showed you his affidavit?

A. No, sir.

Q. Well, let me just—This is what he says under oath.

A. All right, sir.

Q. He said,—the foreman of your jury panel was Terrence R. Hayes, II, of 2514 Emerald Lake, Harlingen, Texas —'Immediately upon retiring to determine punishment Mr. Hayes conducted a'—

A. These were his words?

Q. Well, sort of his words.—'forceful, convincing, and thorough discussion of the Texas parole laws of the State of Texas. This discussion continued during a majority of the time of our deliberation on the punishment decision. At one time Mr. Hayes, who was our foreman and was conducting the deliberations made the remark that even if a punishment of fifty (50) years would be assessed that the Defendant under the parole laws would be released in ten (10) years or less.'

A. I do not recall saying that, sir.

Q. You think you might have said it?

A. I don't think so, no, sir.

Q. You mention in your affidavit that there was a discussion on the parole laws.

A. Yes, sir, I tried to address myself to that just a moment ago.

It was brought up, and I reread the instructions at that time, stating that we were not to consider that, and that, you know, it was a matter for the Texas Department of Pardons and Paroles.

Q. Do you recall who it was that did bring up the subject of paroles?

A. No, sir, I surely do not.

Q. Was it a male or female?

A. I do not recall, sir. There was some discussion from time to time in Spanish, and I am not that fluent in Spanish. As a matter of fact, it leaves a lot to be desired.

You know, something could possibly have been said then, but I have no way of knowing."

Viewing the evidence from the hearing in the light most favorable to the trial court's finding, we hold that the evidence adduced was not of sufficient probative force to establish as a matter of law that the jury's conduct as revealed by the testimony caused the appellant to be assessed a higher punishment than he would have received had the conduct not occurred. Ground of error three is overruled.

 In his final ground of error appellant contends the trial court erred in admitting a photograph showing the deceased lying in prone position in a medical facility with his wound exposed. The photograph tended to support the observations and conclusions of the pathologist who testified extensively concerning the wound and how it produced death. We hold that the photograph was correctly admitted. *Brantley v. State,* 522 S.W.2d 519 (Tex.Cr.App.1975). We have carefully considered all of appellant's grounds of error and they are all overruled.

The judgment of the trial court is affirmed.